UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MORRIS WEATHERSPOON, #471817,

                Plaintiff,          Civil Action No. 14-12789
                                                            Honorable Matthew F. Leitman
v.                                                   Magistrate Judge David R. Grand

GEORGE LNU, *et al.*,

                Defendants.
_____/

### REPORT AND RECOMMENDATION TO GRANT DEFENDANT DR. BADAWI ABDELLATIF'S MOTION FOR SUMMARY JUDGMENT [83]

Before the Court is a Motion for Summary Judgment filed on October 28, 2015, by Defendant Dr. Badawi Abdellatif ("Abdellatif"). (Doc. #83). Plaintiff Morris Weatherspoon ("Weatherspoon"), an incarcerated person, filed a response[1] to Abdellatif's motion (Doc. #76), as well as a "declaration" in support of this filing (Doc. #90). Abdellatif then filed a reply brief on December 9, 2015. (Doc. #91).

An Order of Reference was entered on October 30, 2014, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. §636(b). (Doc. #16). Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. L.R. 7.1(f). Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

### I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Dr. Abdellatif's Motion

---

[1] Weatherspoon's filing is actually captioned "Memorandum in Support of the Plaintiff's Motion to Strike and Oppose Defendants Vettraino and Abdullatif Motion for Summary Judgement [sic]." (Doc. #76). Review of the document's substance, however, makes clear that it is actually a response to Dr. Abdellatif's motion, not a motion seeking affirmative relief.

for Summary Judgment [**83**] be **GRANTED**.

## II. REPORT

### A. Background

Weatherspoon is currently incarcerated at the MDOC's Marquette Branch Prison in Marquette, Michigan, but the conduct about which he complains took place at the Macomb Correctional Facility ("MRF") in New Haven, Michigan. On July 3, 2014, Weatherspoon commenced this action by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. §1983, alleging violations of his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution. (Doc. #1).

At issue in the instant motion are the allegations Weatherspoon makes against Dr. Abdellatif. Specifically, in paragraph 13 of his complaint, Weatherspoon alleges that, on three occasions – January 31, 2013, March 10, 2013, and April 8, 2013 – he was suffering from "severe and intense leg pain," at which time Dr. Abdellatif purportedly denied him medical care, including pain relief medication, and prevented him "access to a physician capable of evaluating [his] need for adequate treatment." (Doc. #1 at ¶13). Weatherspoon asserts that Dr. Abdellatif's delay in providing him such pain relief medication and access to a physician constitutes deliberate indifference to his serious medical needs in violation of the Eighth Amendment. (*Id.* at ¶20). Weatherspoon further alleges that Dr. Abdellatif's actions in this respect (as well as those of several other named defendants) were a "… menacing, malicious, egregious abuse of authority and they engaged in conduct that is shocking to the conscience which is a violation under the fourteenth amendment to the United States constitution …." (*Id.* at ¶23).

### B. Standard of Review

Federal Rule of Civil Procedure 56 provides: "The Court shall grant summary judgment

2

if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (quoting *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989)). Indeed, "'[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'" *Id*. (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)). "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Id*. at 560 (citing

3

*Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

### C. Analysis

In his motion, Dr. Abdellatif argues that summary judgment in his favor is warranted on Weatherspoon's Eighth Amendment claim.[2] (Doc. #83 at 16-18). The Eighth Amendment's Cruel and Unusual Punishment Clause prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain" upon inmates. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (internal citations omitted). An Eighth Amendment claim has two components, one objective and one subjective. To meet the objective prong, a plaintiff must demonstrate that he has been incarcerated under conditions posing a substantial risk of serious harm. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To meet the subjective prong, a plaintiff must demonstrate that the defendant acted with deliberate indifference. *See Jones v. Michigan*, 698 F. Supp. 2d 905, 915 (E.D. Mich. 2010). More specifically, a plaintiff must demonstrate that a prison official knew of and disregarded an excessive risk to inmate health or safety by showing that: (1) the official was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed; and (2) the official actually drew the inference. *See Farmer*, 511 U.S. at 837.

As the Sixth Circuit has recognized, the requirement that the official subjectively perceived a risk of harm and then disregarded it is "meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Comstock v. McCrary*, 273 F.3d 693, 703

---

[2] Dr. Abdellatif also argues that summary judgment is appropriate because Weatherspoon failed to exhaust his administrative remedies. (Doc. #83 at 18-21). Because the Court finds that summary judgment is appropriate on the merits of Weatherspoon's claims, however, it need not address Dr. Abdellatif's exhaustion argument. Thus, the Court will assume, for purposes of ruling on the instant motion, that Weatherspoon properly exhausted his claims against Dr. Abdellatif.

(6th Cir. 2001). The *Comstock* court further explained:

> When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation. On the other hand, a plaintiff need not show that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.' Instead, 'deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'

*Id.* (internal citations omitted).

In his complaint, Weatherspoon alleges that on January 31, 2013, March 10, 2013, and April 8, 2013, he was suffering from "severe and intense" leg pain. (Doc. #1 at ¶13). Weatherspoon then alleges, generally, that, on one or more of these dates, Dr. Abdellatif and three other named defendants "withheld [his] (recorded and documented) prescribed pain relief medication and prevented [him] access to a physician capable of evaluating [his] need for adequate treatment." (*Id*.).

Attached to Dr. Abdellatif's motion, however, are a sworn affidavit and relevant medical records, which together establish that Weatherspoon has failed to raise a genuine issue of material fact as to any alleged deliberate indifference on the date in question. Treatment notes in the record demonstrate that, prior to his arrival at MRF, Weatherspoon was seen by a physician, Ramesh Kilaru, M.D., for left leg pain on January 18, 2013. (Doc. #85-1 at 16-17). Dr. Kilaru noted the "benign nature of the lesion," indicating that if it worsened it could be aspirated. (*Id.* at 17). He provided Weatherspoon with six tablets of 200 mg ibuprofen and advised him that a stronger dose of this medication (400 mg) would arrive soon, as it was being ordered. (*Id.*).

On January 29, 2013, Weatherspoon arrived at MRF and was seen by a physician's assistant for his leg pain, at which time he was advised to purchase over-the-counter pain medication at the prison store. (*Id.* at 19). Two days later, on January 31, 2013, Weatherspoon

first saw Dr. Abdellatif regarding his complaints of a lump on his leg causing him pain.  (*Id.* at 20-21; Doc. #83-2 at ¶6).  Upon review of Weatherspoon's medical records, and after physically examining him, Dr. Abdellatif noted that Weatherspoon had a 2 cm by 3 lump on his left thigh.  (*Id.*).  Dr. Abdellatif further noted that Weatherspoon's medical records indicated that the lump had previously been diagnosed as benign by his treating medical providers at prior institutions.  (Doc. #83-2 at ¶6).  In his affidavit, Dr. Abdellatif stated that, after examining Weatherspoon, he determined that his condition had not been exacerbated or worsened since his prior evaluations and, as a result "further diagnostic testing was not medically indicated or necessary at that time."  (*Id.*).  Dr. Abdellatif further stated that, at the time, Weatherspoon had already been prescribed 400 mg Motrin for his pain, so he simply suggested that Weatherspoon attempt to control his pain with the medication he had been prescribed.  (*Id.*).

The evidence of record establishes that Dr. Abdellatif next saw Weatherspoon on March 9, 2013, following Weatherspoon's request for a bottom bunk accommodation.  (*Id.* at ¶7).  Specifically, Weatherspoon sought this housing accommodation because he claimed he was unable to climb the stairs to the top bunk because of the lump on his left thigh.  (*Id.*).  Upon physical examination of Weatherspoon's left leg and evaluation of his complaints, Dr. Abdellatif noted that it felt like Weatherspoon had a tight muscle cord in the front part of his left leg.  (Doc. #85-1 at 24).  He further noted that Weatherspoon's range of motion was normal, he was able to bend his leg at the knee without difficulty, and the lump was not painful on palpation.  (*Id.*).  Dr. Abdellatif also noted that Weatherspoon refused to provide the nurse with a pain rating when asked.  (*Id.*).  In his affidavit, Dr. Abdellatif stated that, based upon his medical evaluation, there was no objective basis for providing Weatherspoon with a bottom bunk accommodation, so his request was denied.  (Doc. #83-2 at ¶7).

6

The next day, March 10, 2013, Dr. Abdellatif again saw Weatherspoon when he complained of chest pain. (Doc. #83-2 at ¶8; Doc. #85-1 at 25-30). Dr. Abdellatif evaluated Weatherspoon for a cardiac episode, but he exhibited no further signs or complaints of chest pain. (*Id.*). At this appointment, Weatherspoon again raised the issue of the bottom bunk accommodation. (*Id.*). Dr. Abdellatif noted that, upon observation, Weatherspoon's gait was steady, with no limping, and the corrections officer who escorted Weatherspoon to health care indicated that he had walked there without any complaints. (*Id.*). Accordingly, Dr. Abdellatif again determined that a bottom bunk accommodation was not necessary; however, he provided Weatherspoon with a prescription for Tylenol at 325 mg, to take up to three times a day for pain. (*Id.*).

That same night, Weatherspoon submitted a medical kite, again complaining of chest pain. (Doc. #83-2 at ¶8; Doc. #85-1 at 31). Again, though, after evaluation for his chest pain complaints, Weatherspoon sought to readdress his leg complaints. (Doc. #85-1 at 32). In particular, the medical records indicate that Weatherspoon asked the physician's assistant evaluating him to refer him to an outside specialist or send him to the hospital regarding his leg condition. (*Id.*). The physician's assistant noted that Weatherspoon had no signs of distress and did not grimace (but rather smiled) when talking about his leg pain. (*Id.*).

In follow-up, on March 13, 2013, Dr. Abdellatif reviewed Weatherspoon's chart following his renewed requests for a bottom bunk detail and referral to an outside specialist for his leg. (Doc. #83-2 at ¶10; Doc. #85-1 at 33). Again, based on Weatherspoon's medical history and his own recent observations, Dr. Abdellatif determined that Weatherspoon did not medically require an outside evaluation of the lump on his leg or a bottom bunk accommodation. (*Id.*).

Dr. Abdellatif next saw Weatherspoon on April 8, 2013. (Doc. #83-2 at ¶11; Doc. #85-1

7

at 37-39). On that date, Weatherspoon's complaints of leg pain continued and he claimed that the pain had spread to the back of his lower leg and radiated to his thigh, back, and chest. (*Id.*). On examination, however, Dr. Abdellatif observed no physical changes to the lump on his left thigh, and there was no objective indication of any worsening of this condition. (*Id.*). Therefore, Dr. Abdellatif continued the same course of treatment, providing Weatherspoon with Tylenol for his complaints of pain. (*Id.*). On April 29, 2013, Weatherspoon was transferred out of MRF and, therefore, was no longer under the care of Dr. Abdellatif. (Doc. #83-2 at ¶12).

In light of the undisputed facts set forth above, it is clear that Dr. Abdellatif was not deliberately indifferent to a serious medical need. Even assuming that the lump on Weatherspoon's left leg was "sufficiently serious" to satisfy the objective component of an Eighth Amendment claim, Weatherspoon has failed to establish the subjective element of such a claim. As noted above, Dr. Abdellatif examined and treated Weatherspoon on several occasions; during each such visit, he evaluated Weatherspoon's complaints and medical history, and used his professional judgment to determine the appropriate course of medical treatment. (Doc. #83-2 at ¶¶6-13). Moreover, prior to treating with Dr. Abdellatif, Weatherspoon had had his leg examined by other medical providers, who had performed diagnostic tests, determined that the lump on his leg was benign, and recommended treatment with over-the-counter pain medication. (Doc. #85-1 at 1-19). Thus, where there was no indication that the previous diagnosis was incorrect, that Weatherspoon's condition had worsened, or that additional or different treatment was required, Dr. Abdellatif reasonably continued the course of treatment previously prescribed. Specifically, Dr. Abdellatif affirmed that, in his opinion, it "was not medically necessary for him to be seen by an outside specialist" (Doc. #83-2 at ¶13), and Weatherspoon's unsupported assertions to the contrary do not create a genuine issue of fact. *See Umbarger v. Corr. Med.*

*Servs.*, 93 F. App'x 734, 736 (6th Cir. 2004) (mere differences of opinion between a prisoner and prison medical staff over the kinds of treatment a prisoner needs do not constitute deliberate indifference).

Courts distinguish between "cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (internal quotations omitted). While the former cases may evidence the type of culpability required to state a deliberate indifference claim, the latter amount to assertions of medical negligence and do not satisfy the requisite subjective component of such claims. *Id.* Indeed, courts have recognized, "In cases where an inmate alleges deliberate indifference but the record demonstrates that the inmate received medical attention and is, in essence, filing suit because he disagrees with certain decisions made by the medical staff, the defendant is entitled to summary judgment." *Allison v. Martin*, 2009 WL 2885088, at *6 (E.D. Mich. Sept. 2, 2009) (internal citations omitted); *see also Umbarger*, 93 F. App'x at 736. This is exactly the case here: Weatherspoon received treatment from Dr. Abdellatif (as well as other medical professionals) for the lump on his leg and was provided with pain medication deemed appropriate for his condition. The fact that Weatherspoon believes different (or additional) treatment was warranted is simply insufficient to survive summary judgment under the relevant case law. *See Allison,* 2009 WL 2885088, at *6; *Umbarger*, 93 F. App'x at 736.[3]

---

[3] Weatherspoon also asserts that Dr. Abdellatif's actions were a "menacing, malicious, egregious abuse of authority" and were "shocking to the conscience," thus establishing a violation of the substantive due process clause of the Fourteenth Amendment. (Doc. #1 at ¶23). This conclusory assertion does not overcome Dr. Abdellatif's well-supported motion. As the Sixth Circuit has explained, "A plaintiff asserting a substantive due process claim faces a virtually insurmountable uphill struggle. He must show that the government conduct in question was so reprehensible as to 'shock the conscience' of the court." *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 n. 4 (6th Cir.

**III.    CONCLUSION**

For the reasons set forth above, **IT IS RECOMMENDED** that Dr. Abdellatif's Motion for Summary Judgment [**83**] be **GRANTED**.

Dated: December 23, 2015               s/ David R. Grand
                                       DAVID R. GRAND
                                       UNITED STATES MAGISTRATE JUDGE


**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above.  *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the

---

1995).  Here, Dr. Abdellatif's actions do not constitute deliberate indifference to a serious medical need, it follows that his conduct was not, as a matter of law, so reprehensible as to shock the Court's conscience.  Thus, summary judgment is also appropriate on Weatherspoon's Fourteenth Amendment claim.

10

objections.

## CERTIFICATE OF SERVICE

       The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 23, 2015.

                                      s/Eddrey O. Butts
                                      EDDREY O. BUTTS
                                      Case Manager