UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MORRIS WEATHERSPOON,

      Plaintiff,                              Case No. 14-cv-12789
                                               Hon. Matthew F. Leitman

v.

GEORGE LNU, *et al.*

      Defendants.

_____/

## OPINION AND ORDER (1) OVERRULING PLAINTIFF'S OBJECTIONS (ECF #137) TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (ECF #127), (2) ADOPTING THE MAGISTRATE JUDGE'S RECOMMENDED DISPOSITION, (3) GRANTING DEFENDANTS SCHEPPELMAN AND GEORGE'S MOTION FOR SUMMARY JUDGMENT (ECF #116), AND (4) CERTIFYING THAT AN APPEAL CANNOT BE TAKEN IN GOOD FAITH FROM THIS ORDER OR FROM ANY OF THE COURT'S PRIOR ORDERS GRANTING SUMMARY JUDGMENT (ECF ## 67, 119, 120)

Plaintiff Morris Weatherspoon ("Weatherspoon") is an inmate in the custody of the Michigan Department of Corrections (the "MDOC"). In this action, Weatherspoon brings constitutional claims against nine MDOC employees. The Court has already dismissed all of Weatherspoon's claims against seven of those employees. (*See* ECF ## 67, 119, 120.) The only claims that remain are against Defendants Tamara Scheppelman ("Scheppelman") and Susan George ("George").

1

Scheppelman is a nurse at the Macomb Correctional Facility ("MRF"). Weatherspoon alleges that Scheppelman violated his Eighth and Fourteenth Amendment rights by acting with deliberate indifference to his medical needs during his visit to the MRF infirmary on March 10, 2013.

George is a psychiatrist at MRF. Weatherspoon, who has been diagnosed with nonorganic psychosis, alleges that George violated his Eighth and Fourteenth Amendment rights by keeping him in a mental health program and forcibly medicating him. Weatherspoon also alleges that George retaliated against him in violation of the First Amendment.

Scheppelman and George have moved for summary judgment. (*See* ECF #116.) The assigned Magistrate Judge has now issued a Report and Recommendation (the "R&R") in which he recommends that the Court grant summary judgment in favor of both Scheppelman and George. (*See* ECF #127.) Weatherspoon has filed timely objections to the R&R (collectively, the "Objections"). (*See* ECF #137.)  For the reasons explained below, the Court **OVERRULES** Weatherspoon's Objections in their entirety, **ADOPTS** the Magistrate Judge's recommended disposition, and **GRANTS** summary judgment in favor Defendants Scheppelman and George.

# I

## A

Weatherspoon's claims against Scheppelman and George involve separate and discrete sets of facts. The Court describes the factual background for each defendant separately below.

### 1

Weatherspoon's claims against Scheppelman arise out of her treatment of him on March 10, 2013. However, to understand the nature of these claims, it is necessary to provide a more detailed background of Weatherspoon's medical history.

In January 2013, the MDOC housed Weatherspoon at the Kinross Correctional Facility ("KCF"). On January 18, 2013, Weatherspoon was treated for leg pain by KCF physician Dr. Ramesh Kilaru ("Dr. Kilaru"). Dr. Kilaru observed that Weatherspoon had a lump on his left leg, and he advised Weatherspoon of the "benign nature of the lesion." (Weatherspoon Medical Records, ECF #85-1 at 17, Pg. ID 613.)[1] Dr. Kilaru prescribed Weatherspoon over-the-counter pain medication

---

[1] Scheppelman and George direct the Court to Weatherspoon's medical records, which are already in the record. (*See* Motion for Summary Judgment, ECF #116 at 6, Pg. ID 781.) Defendant Dr. Badawi Abdellatif attached these medical records to his motion for summary judgment, which the Court granted on March 30, 2016. (*See* ECF #119.) Dr. Abdellatif submitted a sworn declaration stating that the attached medical records were "kept in the normal court of business by the Michigan Department of Corrections and its employees and service providers and are

(such as Motrin), and he listed February 2, 2013, as the date on which Weatherspoon should stop taking that medication. (*See id.* at 17-18, Pg. ID 613-14.)

On or around January 28, 2013, the MDOC transferred Weatherspoon to MRF. (*See* Dr. Badawi Abdellatif Decl., ECF #83-2 at ¶ 5, Pg. ID 578; ECF #85-1 at 18, Pg. ID 614.)  When Weatherspoon arrived at MRF, he received a medical examination from a physician's assistant. (*See* ECF #85-1 at 19, Pg. ID 615.)  The physician's assistant noted that Weatherspoon had a "history of thigh pain and [a] 'lump,'" and the physician's assistant advised Weatherspoon to purchase over-the-counter pain medication from the prison store. (*Id.*)

Three days later, on January 31, 2013, Dr. Badawi Abdellatif ("Dr. Abdellatif"), a physician at MRF, examined Weatherspoon. (*See* Dr. Abdellatif Decl., ECF #83-2 at ¶ 6, Pg. ID 578.)  Dr. Abdellatif reviewed the notation in Weatherspoon's medical records that the lump on Weatherspoon's thigh was benign, and he did not see any indications that the lump had worsened since Weatherspoon's

---

maintained and updated contemporaneously to reflect an inmate's medical treatment." (Dr. Abdellatif Decl., ECF #83-2 at ¶ 4, Pg. ID 577-578.)  Dr. Abdellatif further stated that he is "familiar with [and] trained to review inmate medical records in the normal course of treatment of a patient" and that he relied upon the specific records attached to his motion for summary judgment during his evaluation and treatment of Weatherspoon. (*Id* at ¶¶ 4-13.)  Accordingly, the Court finds that the medical records qualify for the business records exception to the rule against hearsay. *See* Fed. R. Evid. 803(6); *Norton v. Colyer*, 828 F.2d 384, 386-387 (6th Cir. 1987) (holding that medical records may qualify for the business record exception to the rule against hearsay).  Thus, the Court may consider the medical records in deciding Defendants' motion for summary judgment.

prior evaluations. (*See id.*)  At the conclusion of the examination, Dr. Abdellatif

"suggested that Weatherspoon attempt to control his pain with the [400 milligrams

of Motrin] he had been prescribed." (*Id.*)   Weatherspoon "verbalized [his]

understanding" of Dr. Abdellatif's recommendation. (ECF #85-1 at 20, Pg. ID 616.)

At approximately 12:30 a.m. on March 10, 2013, Weatherspoon sought

medical attention for chest pain. (*See id.* at 25, Pg. ID 621.)  Scheppelman responded,

but when she arrived Weatherspoon did not complain of chest pain.  Instead, he

requested a bottom bunk accommodation for his leg pain (which the MDOC had

previously denied). (*See id.* at 26, 32, Pg. ID 622, 628.)  Scheppelman wrote the

following in Weatherspoon's medical records:

> Inmate is currently taking motrin 400 mg, he was
> instructed to take the motrin with food.  Inmate verbalized
> understanding.  Inmate left here via ambulatory without
> complaints of chest pain.  Inmate given saltine crackers
> and milk to coat the stomach, he only had a few sips of
> milk then said it was all he drink [sic].

(ECF #85-1 at 25-26, Pg. ID 621-622.)  Scheppelman also placed a call to Dr.

Abdellatif to secure follow-up care for Weatherspoon's pain. (*Id.*)  Dr. Abdellatif

returned the call at 12:50 a.m., and he saw Weatherspoon at approximately 8:30 a.m.

that same day. (*Id.* at 26-30, Pg. ID 622-26.)  He determined that Weatherspoon did

not require an outside evaluation and prescribed Weatherspoon 325 milligrams of

acetaminophen for his leg pain. (*See* Dr. Abdellatif Decl., ECF #83-2 at ¶ 8, Pg. ID

580; ECF #85-1 at 27-30, Pg. ID 623-26.)

In his Complaint, Weatherspoon alleges that Scheppelman violated his Eighth and Fourteenth Amendment rights, and acted with deliberate indifference to his medical needs, by failing to adequately respond to his leg pain. (*See* Compl. at ¶13, ECF #1 at 4, Pg. ID 4.)   Specifically, Weatherspoon alleges that Scheppelman "withheld [his] prescribed pain relief medication and prevented [him] access to a physician capable of evaluating [his] need for adequate treatment." (*Id.*)

## 2

George provided Weatherspoon with mental health treatment while he was housed at MRF.  The MDOC determined that Weatherspoon needed such treatment because he had been diagnosed with nonorganic psychosis. (*See* ECF #85-1 at 40, Pg. ID 636.)

Weatherspoon claims that, on March 21, 2013, George improperly denied his request to be "discharge[ed] and/or terminat[ed] from anti-psychotic medications and [the] mental health program." (Compl. at ¶15, ECF #1 at 5, Pg. ID 5.) Weatherspoon further says that George "wrongfully prescribe[ed] powerful antipsychotic medication and "forcibly injected [him] with antipsychotic medication against [his] will." (*Id.* at ¶22, ECF #1 at 8, Pg. ID 8.)  Weatherspoon insists these actions violated his Eighth and Fourteenth Amendment rights. (*See id.* at ¶¶ 22-23.) Weatherspoon has also brings a retaliation claim against George under the First Amendment. (*See id.* at ¶24.).

**3**

On April 30, 2013, the MDOC transferred Weatherspoon from MRF to Handlon Correctional Facility ("Handlon").  After that time, he was no longer under the care of Scheppelman or George. (*See* ECF #85-1 at 40-41, Pg. ID 640-41.)

On May 7, 2013, a full week after Weatherspoon had transferred out of MRF and left the care of Scheppelman and George, a mental health hearing committee at Handlon (the "Handlon Committee") issued a unanimous decision finding Weatherspoon "mentally ill" and authorizing his treating psychiatrist – who was not George – to forcibly medicate him. (*See* ECF #1-1 at 58, Pg. ID 58.)  Neither Scheppelman nor George participated in the Handlon Committee's decision to medicate Weatherspoon. (*Id.*)

**B**

On July 3, 2014, Weatherspoon filed this action against nine MDOC employees, including Scheppelman and George. (*See* Compl., ECF #1.) Weatherspoon alleges, among other things, that Scheppelman and George violated his Eighth and Fourteenth Amendment rights by acting with deliberate indifference to his medical needs. (*See id.* at ¶20, 23.)  Weatherspoon also alleges that George retaliated against him in violation of the First Amendment. (*See id.* at ¶24.)

On March 15, 2016, Scheppelman and George moved for summary judgment. On July 19, 2016, the assigned Magistrate Judge issued the R&R in which he

recommended that the Court grant summary judgment in favor of both Defendants. Weatherspoon filed the Objections on December 16, 2016.[2] (*See* ECF #137.)  Rather than describe the Magistrate Judge's analysis or Weatherspoon's Objections here, the Court will describe the relevant portions of each in its analysis below.

## II

## A

When a party has objected to portions of a Magistrate Judge's R&R, the Court reviews those portions *de novo. See* Fed. R. Civ. P. 72(b)(3); *see also Lyons v. Comm'r of Soc. Sec.*, 351 F.Supp.2d 659, 661 (E.D. Mich. 2004).  The Court has no duty to conduct an independent review of the portions of the R&R to which a party has not objected. See *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

## B

A movant is entitled to summary judgment when she "shows that there is no genuine dispute as to any material fact . . . ." *SEC v. Sierra Brokerage Servs., Inc.,* 712 F.3d 321, 326–27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986)) (quotations omitted).  When reviewing the record, "the

---

[2] Weatherspoon initially filed objections to the R&R on August 29, 2016. (*See* ECF #130.)  On October 12, 2016, the Court entered an order in which it (1) struck Weatherspoon's August 29 filing because it was not legible and (2) provided Weatherspoon the opportunity to re-file objections to the R&R. (*See* ECF #132.) Weatherspoon timely re-filed the Objections in a more (but not completely) legible format on December 16, 2016. (*See* ECF #137.)

court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson,* 477 U.S. at 252. Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251-252. Indeed, "[c]redibility determinations, the weighing of the evidence, and the drafting of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Id.* at 255.

## III

Weatherspoon's Objections consist of six numbered objections over fifty-four hand-written pages. Before turning specifically to the numbered objections, the Court explains why Scheppelman and George are entitled to summary judgment.

## A

Weatherspoon makes two claims against Scheppelman. First, he alleges that Scheppelman showed deliberate indifference to his medical needs in violation of the Eighth Amendment. (*See* Compl. at ¶20, ECF #1 at 7, Pg. ID 7.) Second, he alleges that Scheppelman "engaged in conduct that is shocking to the conscience [in] violation of the [F]ourteenth [A]mendment." (*See id.* at ¶ 23, ECF #1 at 8, Pg. ID 8.) Both claims fail as a matter of law.

9

**1**

There are two components to an Eighth Amendment deliberate indifference claim, one objective and the other subjective. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).  To satisfy the objective component, the plaintiff must show "that the medical need at issue is 'sufficiently serious.'" *Comstock*, 273 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  To satisfy the subjective component of a deliberate indifference claim, the plaintiff must show "that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that [s]he did in fact draw the inference, and that [s]he then disregarded that risk."  *Id.* Further, "the defendant must possess a 'sufficiently culpable state of mind,' rising above negligence or even gross negligence and being 'tantamount to intent to punish.'" *Broyles v. Corr. Medical Servs., Inc.*, 472 Fed. App'x 971, 975 (6th Cir. 2012) (quoting *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994)).

Nothing in the record indicates that Scheppelman's actions meet the subjective component of a deliberate indifference claim.[3]  In fact, Weatherspoon's medical records show just the opposite – that Scheppelman took affirmative steps to

---

[3] The Court will assume, without deciding, that the lump on Weatherspoon's leg and the associated pain he experienced constituted a "sufficiently serious" medical need that satisfies the objective component of a deliberate indifference claim.

mitigate Weatherspoon's pain. (*See* ECF #85-1 at 25-26, Pg. ID 621-22.)  When Scheppelman saw Weatherspoon on March 10, 2013, she noted that he was "currently taking motrin 400 mg." (*Id.* at 26, Pg. ID 622.)   She instructed [Weatherspoon] to take the motrin with food" and gave him "saltine crackers and milk to coat [his] stomach." (*Id.*)  Scheppelman then called Dr. Abdellatif to secure follow-up care for Weatherspoon, and Dr. Abdellatif saw Weatherspoon the same day to prescribe him additional pain medication. (*See id.* at 27-30, Pg. ID 623-626.) Thus, Scheppelman attempted to address Weatherspoon's pain and did not ignore his medical needs.

In an attempt to undermine the statements in his medical records and to create a material factual dispute, Weatherspoon accuses Scheppelman of "documenting false health record entries." (ECF #123 at 15, Pg. ID 835.)  Weatherspoon supports this accusation with two of his own affidavits.  He states in the first affidavit that Scheppelman "intentionally record[ed] and document[ed] dishonest and fabricated false assertions concern[ing] [his] medical treatments." (ECF #126 at 1, Pg. ID 842.) In the second affidavit, he states that "Nurse Scheppelman produced false and perjured medical documents, pleadings, and other documents in the record." (ECF #140 at 1-2, Pg. ID 959-60.)

Weatherspoon's claims of falsified medical records do not preclude summary judgment for two reasons.  First, his affidavits include only conclusory statements

11

that Scheppelman fabricated medical records.  Weatherspoon's affidavits do not "set forth specific facts," as required by Rule 56(c) of the Federal Rules of Civil Procedure, in support of his accusation.  Courts have generally held that "conclusory statements," even if made under the penalty of perjury, are insufficient to create a genuine issue of material fact. *See, e.g.*, *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004) ("Conclusory" testimony unsupported by specific facts was not sufficient to allow a party to survive summary judgment); *Kaplan v. Michigan Dept. of Corrections*, 2013 WL 1500426 at *1 (W.D. Mich. Apr. 10, 2013) (Affidavit containing "conclusory allegations of widespread falsification by multiple doctors" was insufficient to allow plaintiff to survive summary judgment).  Because Weatherspoon's affidavits do not set forth specific facts showing that Scheppelman fabricated the particular portions of the medical records on which the Court relied above, the affidavits are insufficient to stave off summary judgment.

Second, and more importantly, Weatherspoon *admits* the truth of the statements in the medical records that are fatal to his claim against Scheppelman. More specifically, Weatherspoon admits that Scheppelman "provided milk [and] crackers and paged Dr. Abdellatif" so that the doctor could "examine" him and provide further care. (ECF #123 at 14, Pg. ID 834; *see also* Objections, ECF #137 at 4, Pg. ID 890.)  Thus, Weatherspoon concedes that Scheppelman took prompt action to address his claimed pain – namely, seeking additional examination for him

12

by a doctor – and that demonstrates that she was not deliberately indifferent to his pain.

In summary, Weatherspoon has not shown that Scheppelman's actions on March 10, 2013 satisfy the subjective component of an Eighth Amendment deliberate indifference claim. At most, Weatherspoon disagrees with Scheppelman's course of treatment. Disagreement with a course of treatment, however, is not sufficient to show deliberate indifference to serious medical needs. *See Selby v. Martin*, 84 Fed. App'x 496, 499 (6th Cir. 2003). And in cases where, as here, "the record demonstrates that the inmate received medical attention and is, in essence, filing suit because he disagrees with certain decisions made by the medical staff, the defendant is entitled to summary judgment." *Allison v. Martin*, 2009 WL 2885088, at *6 (E.D. Mich. Sept. 2, 2009) (citing *McFarland v. Austin*, 196 Fed. App'x 410, 411 (6th Cir. 2006)).

## 2

Weatherspoon's second claim against Scheppelman is a substantive due process claim under the Fourteenth Amendment. In order to prevail on such a claim, Weatherspoon "must show that the government conduct in question was so reprehensible as to 'shock the conscience' of the court." *Rimmer-Bey v. Brown,* 62 F.3d 789, 791 n. 4 (6th Cir. 1995) (citing *Rochin v. California*, 342 U.S. 165 (1952)). Scheppelman's actions do not shock the Court's conscience. Again, she secured

additional treatment for Weatherspoon from Dr. Abdellatif and attempted to provide him food so that he could take his medication. That conduct does not disturb the Court in the least. Accordingly, Scheppelman is entitled to summary judgment on Weatherspoon's Fourteenth Amendment claim.

## B

Weatherspoon makes three claims against George. First, he alleges that George was deliberately indifferent to his medical needs in violation of the Eighth Amendment because she "wrongly prescrib[ed] powerful antipsychotic medications" and "forcibly injected [him]." (Compl. at ¶22, ECF #1 at 8, Pg. ID 8.) Second, Weatherspoon alleges that George "engaged in conduct that is shocking to the conscience [in] violation of the [F]ourteenth [A]mendment." (*Id.* at ¶23.) Third, he pleads a First Amendment retaliation claim against George. (*See id.* at ¶24.) As explained below, George is entitled to summary judgment on all three claims.

## 1

Weatherspoon's claim that George violated the Eighth Amendment by mis-prescribing mental health treatment and anti-psychotic medication fails because it boils down to a disagreement about the proper course of treatment. Weatherspoon insists he did not "need" the medication or treatment. (Weatherspoon Affidavit, ECF

#139 at 2, Pg. ID 956.)  George disagreed.[4]  But as noted above, a plaintiff must show more than disagreement with a medical professional's judgment concerning the proper treatment in order to prevail on an Eighth Amendment deliberate indifference claim. *See Selby*, 84 Fed. App'x at 499; *Allison v. Martin*, 2009 WL 2885088, at *6 (E.D. Mich. Sept. 2, 2009) (citing *McFarland v. Austin*, 196 Fed. App'x 410, 411 (6th Cir. 2006)).  Accordingly, George is entitled to summary judgment on Weatherspoon's claim based upon George's decision to prescribe mental health treatment and anti-psychotic medication.

George is likewise entitled to summary judgment on Weatherspoon's claim that George violated the Eighth Amendment by forcibly medicating him.  The evidence in the record makes clear that George did not do so.  First, while George did prescribe certain oral anti-psychotic medication, she did not compel Weatherspoon to take that medication.  On the contrary, as Weatherspoon states in his Declaration, "George *begged* [him] to at least try the medication," and he "agreed" to take the medication based on a belief that he would be "discharged" if he "[didn't] like the medication." (ECF #122 at 2, Pg. ID 816, emphasis added.)  Thus, George did not force Weatherspoon to take oral medication.  Second, while Weatherspoon may have been forcibly injected with anti-psychotic medication at

---

[4] There is no evidence to support Weatherspoon's conclusory allegation that George prescribed the medication in bad faith and with the knowledge that he did not need it. (*See* Compl. ¶22, ECF #1 at 8, Pg. ID 8.)

15

some point during his incarceration, George neither made the decision to inject nor played any role in the injection process.  Indeed, the decision to inject the medication was made by a mental health committee *after* Weatherspoon left George's care and transferred to a facility at which George did not work. (*See* ECF #1-1 at 8-9, Pg. ID 58-59.)   George is therefore entitled to summary judgment on Weatherspoon's Eighth Amendment claim based upon the forcible injection of anti-psychotic medication.

**2**

Weatherspoon also asserts a substantive due process claim against George based upon the forcible injection of anti-psychotic medication and upon his allegation that George forced him to take oral anti-psychotic medications.  This claim fails for the same reasons that his Eighth Amendment claims based upon these allegations fail.  George did not force Weatherspoon to take oral medications and did not forcibly inject him with any medications.  Accordingly, George is entitled to summary judgment on Weatherspoon's Fourteenth Amendment substantive due process claim.

**3**

In order to succeed on his First Amendment retaliation against George, Weatherspoon must establish that:

> (1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that

16

> would deter a person of ordinary firmness from continuing
> to engage in that conduct; [and] (3) there is a causal
> connection between elements one and two—that is, the
> adverse action was motivated at least in part by his
> protected conduct.

*Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 294 (6th Cir. 2012) (quoting

*Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006).

Although Weatherspoon pleads a First Amendment claim in his Complaint, he does

not identify or submit any evidence in any of his subsequent filings showing that he

engaged in protected conduct or showing that George took any adverse action

against him because of that protected conduct.  Accordingly, George is entitled to

summary judgment on Weatherspoon's First Amendment claim.

## IV

The Court turns now to Weatherspoon's Objections to the R&R.  The

Objections take up fifty-four handwritten pages; they tend to ramble; and they are

difficult to decipher.  The Court has endeavored below to capture and address the

"gist" of each objection.

## **Objection #1**

In his first objection, Weatherspoon objects to the Magistrate Judge's

statement that "Weatherspoon did not specify in his complaint which individual

defendants allegedly denied [him] pain medication." (ECF #137 at 3-6, Pg. ID 889-

892.)   However, the Magistrate Judge's recommendation to grant summary

judgment in favor of Scheppelman was not based on the lack of specificity in Weatherspoon's Complaint. Rather, the recommendation was based upon the Magistrate Judge's conclusion that nothing in the record shows that Scheppelman's actions on March 10, 2013 meet the subjective component of an Eighth Amendment deliberate indifference claim. And, in any event, Scheppelman is entitled to summary judgment for the reasons explained above. Accordingly, the Court **OVERRULES** Objection #1.

### Objection #2

In his second objection, Weatherspoon appears to argue that Scheppelman is not entitled to summary judgment because there is a factual dispute as to whether Scheppelman provided him with pain medication. (*See* ECF #137 at 6-11, Pg. ID 892-97.) The Court disagrees because even if such a factual dispute exists, it is immaterial. As explained above, Weatherspoon admits that Scheppelman provided care – by giving him food to coat his stomach in preparation for his ingestion of his pain medication – and by requesting an additional examination by a physician. Thus, even if Scheppelman did not personally provide Weatherspoon with pain medication, she was not deliberately indifferent to Weatherspoon's medical needs. Accordingly, the Court **OVERRULES** Objection #2.

18

**Objection #3**

In his third objection, Weatherspoon makes two arguments.  First, he argues that George "took no reasonable steps to protect [Weatherspoon] from the mental health panel hearing that eventually deemed [him] as suffering a mental illness that required the forcible injections of antipsychotic drugs." (ECF #137 at 13, Pg. ID 899; *see also*, *id.* at 19-21, Pg. ID 905, repeating the argument.)  Second, he argues that the Magistrate Judge failed to mention previous findings by "Dr. Surapenani," "mental health provider Ms. Jill Strahan," and other unnamed providers that Weatherspoon was not mentally ill. (*Id* at 13-16, Pg. ID 899-902.)

The Court rejects both arguments.  Weatherspoon has not shown that George played any role in the panel's determination to forcibly medicate him, and Weatherspoon has not shown that she had a duty to oppose that determination.  Moreover, any harm that Weatherspoon claims to have suffered from the forced medication was caused by the mental health panel, not by George.   Next, Weatherspoon's references to any previous findings by other mental health professionals are immaterial to his claims against George.  At most, such findings suggest that it may have been possible for reasonable medical professionals to disagree with George's diagnosis and treatment.  But such disagreement with George's medical judgment is not sufficient to support a claim of deliberate indifference against George. *See Selby*, 84 Fed. App'x at 499; *Allison v. Martin*,

2009 WL 2885088, at *6 (E.D. Mich. Sept. 2, 2009) (citing *McFarland v. Austin*,

196 Fed. App'x 410, 411 (6th Cir. 2006)).  Accordingly, the Court **OVERRULES**

Objection #3.

## Objection #4

In his fourth objection, Weatherspoon argues that the Magistrate Judge denied

him the opportunity to engage in discovery. (*See* ECF #137 at 21-27, Pg. ID 907-

913.)  In support of this objection, Weatherspoon attaches an affidavit in which he

claims that he "never had any fair and reasonable opportunity to conduct discovery"

and that he was "not allowed to submit interrogatories [or request] admissions, and

production of documents." (ECF #140 at 6, Pg. ID 964.)

Weatherspoon is incorrect.  On November 25, 2014, the Magistrate Judge

issued an order striking Weatherspoon's motions to compel because Weatherspoon

had not yet served the discovery requests on the Defendants. (*See* ECF #31.) In that

order, the Magistrate Judge made clear that Weatherspoon was free to "serve

defendants with discovery requests" and that if the Defendants failed to respond,

Weatherspoon could then seek "an order compelling production." (*Id.* at 1-2, Pg. ID

261-62.)  Weatherspoon has not presented any evidence that he served discovery;

that Defendants then failed to respond; and that he filed a motion to compel.  Simply

put, Weatherspoon has failed to show that he was denied the right to conduct

discovery.  Accordingly, Objection #4 is **OVERRULED.**

**Objection #5**

In his fifth objection, Weatherspoon argues that the Magistrate Judge erroneously relied on medical records that Scheppelman fabricated. (*See* ECF #137 at 27-37, Pg. ID 913-923.)  As explained above, however, Weatherspoon's assertions of fabrication are conclusory, and he admits the truth of the portions of the records that are fatal to his deliberate indifference claim against Scheppelman.  Accordingly, Objection #5 is **OVERRULED** because Weatherspoon's claims of fabricated medical records do not create an issue of material fact.

**Objection #6**

Weatherspoon's sixth numbered objection is not clearly written and fails to make a single specific objection to the R&R.  Instead, the objection appears to simply repeat a number of arguments that Weatherspoon made in his other objections or papers.  Accordingly, Objection #6 is **OVERRULED**. *See Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("[A] general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to discern those issues that are dispositive and contentious.").

**V**

For the reasons provided above, **IT IS HEREBY ORDERED** that:

- Weatherspoon's Objections (ECF #137) are **OVERRULED** in their entirety;

- The Magistrate Judge's recommended disposition is **ADOPTED;** and

- Defendants Scheppelman and George's motion for summary judgment (ECF #116) is **GRANTED.**

Moreover, the Court certifies that any appeal from this decision cannot be taken in good faith. *See* 28 U.S.C. § 1915(a)(3).   The Court also certifies that Weatherspoon cannot in good faith appeal any of the Court's previous decisions (ECF ## 67, 119, 120) granting summary judgment in favor of the other defendants in this case. *See id.*

**IT IS SO ORDERED.**

<div style="margin-left:40%">

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

</div>

Dated:  March 9, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 9, 2017, by electronic means and/or ordinary mail.

<div style="margin-left:40%">

s/Holly A. Monda
Case Manager
(313) 234-5113

</div>